# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAFIYA GHORI-AHMAD, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES COMMISSION ON INTERNATIONAL RELIGIOUS FREEDOM, <br><br> Defendant. | Civil Action No. 12-00936 (BJR) <br><br> MEMORANDUM OPINION |

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

This matter is before the Court on a motion for partial dismissal by Defendant, the United States Commission on International Religious Freedom (hereinafter "USCIRF"). *See* Def's Mot., Dkt. #9. Plaintiff Safiya Ghori-Ahmad alleges discrimination and retaliation in violation of the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.* Ghori-Ahmad also brings a claim for detrimental reliance. USCIRF moves to dismiss the detrimental reliance claim, the retaliation claim, and portions of Ghori-Ahmad's discrimination claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having reviewed the parties' briefs together with all other relevant materials, the Court now finds and rules as follows:

## I. BACKGROUND

Ghori-Ahmad is a Muslim of Indian descent. Compl. ¶¶ 3, 12. On June 1, 2009, USCIRF offered Ghori-Ahmad a position as South Asia Policy Analyst, which she accepted on June 12, anticipating a start date of July 14. *Id.* ¶¶ 29-30. After accepting the offer Ghori-Ahmad resigned from her then-current position. *Id.* ¶ 31. USCIRF, through its Acting Executive Director Knox Thames, rescinded the job offer on July 1, 2009, and later offered

Ghori-Ahmad a 90-day position with USCIRF, which she accepted.  *Id.* ¶¶ 47, 58.

On August 14, 2009, Ghori-Ahmad sought Equal Employment Opportunity ("EEO") counseling, and filed a formal complaint on September 17, 2009.  *Id.* ¶ 81.  The EEO counselor issued a Report of Investigation on March 10, 2010, and Ghori-Ahmad requested a hearing with an administrative law judge ("ALJ").  *Id.* ¶83.  The ALJ dismissed the complaint on the ground that Title VII did not apply to USCIRF.  Shortly thereafter, Congress amended the International Religious Freedom Act to extend the protections of the CAA (including its incorporated anti-discrimination provisions) to USCIRF employees.  *See* International Religious Freedom Reform and Reauthorization Act (IRFRRA), Pub. L. No. 112-75, § 3, 125 Stat. 1271, 1273 (2011); 22 U.S.C. § 6432b(g).  On December 27, 2011, Ghori-Ahmad requested counseling with the Office of Compliance as provided in the CAA dispute resolution procedures, 2 U.S.C. §§ 1401-02.  Compl. ¶ 91.  The parties proceeded through mediation, as required by 2 U.S.C. § 1403, and the mediation period ended on March 7, 2012.  *Id.* ¶ 92.  This action followed.

Ghori-Ahmad alleges that USCIRF discriminated against her on the basis of her religion, race,[1] and national origin when it rescinded the job offer.  *Id.* ¶¶ 96, 105.  USCIRF's motion does not address those discrimination claims.  Ghori-Ahmad also alleges that USCIRF discriminated against her when it did not extend her 90-day position.  *Id.* ¶¶ 98, 107.  USCIRF moves to dismiss this claim under Rule 12(b)(6), on the ground that Ghori-Ahmad was an independent contractor during those 90 days and not covered by the CAA's anti-discrimination protections.  Def's Mot. at 15-16.

---

[1] Ghori-Ahmad refers several times to "race/national origin" discrimination in her Complaint.  Compl. ¶¶ 100, 109.  She concedes that she referred only to national origin discrimination during the administrative process.  Pl's Opp. at 10, n.3.  Because she did not exhaust any race discrimination claims, the Court will treat them as subsumed within the claim of national origin discrimination.

2

Ghori-Ahmad also alleges that USCIRF retaliated against her EEO activity by isolating her on the job, threatening to escort her from the building, downgrading her job duties, withdrawing all recommendations for full time employment, and failing to renew or extend the 90-day position. Compl. ¶¶ 114-15. USCIRF moves to dismiss Ghori-Ahmad's retaliation claim under Rule 12(b)(6), on the ground that she was an independent contractor during the 90-day position, therefore not covered by the CAA. Def's Mot. at 27. USCIRF also contends that Ghori-Ahmad failed to allege any "materially adverse action." *Id.*

Finally, Ghori-Ahmad makes two claims of detrimental reliance: first, that she relied to her detriment on USCIRF's initial offer, by resigning her then-current position, and second, that she accepted the 90-day position in reliance on a promise from Acting Director Knox Thames that the temporary position would become permanent. Compl. ¶ 119. USCIRF moves to dismiss Ghori-Ahmad's detrimental reliance claims under Rule 12(b)(1), asserting that this Court lacks jurisdiction to hear a claim of detrimental reliance, and that Ghori-Ahmad did not exhaust administrative procedures. Def's Mot. at 12-14. USCIRF also argues that even if this Court could exercise jurisdiction, Ghori-Ahmad has failed to state a claim because the CAA precludes claims for detrimental reliance. *Id.* at 14.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the allegations within the complaint. *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The court "must construe the allegations and facts in the complaint in the light most favorable to the

plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Bailey v. Verizon Commc'ns, Inc.*, 544 F. Supp. 2d 33, 36 (D.D.C. 2008).

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Rule 12(b)(1)

When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). The court must accept as true all factual allegations in the complaint, but those allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* (internal quotations omitted). Because subject-matter jurisdiction focuses on a court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

## III. DISCUSSION

### A. USCIRF's Motion to Dismiss Ghori-Ahmad's Discrimination Claims is Denied

USCIRF asserts that Ghori-Ahmad's allegations, together with two documents USCIRF submitted along with its motion, establish as a matter of law that Ghori-Ahmad worked as an independent contractor during the 90-day position, and thus did not enjoy the anti-discrimination protections of the CAA.[2] The facts alleged by Ghori-Ahmad render such a conclusion premature.

Section 3 of IRFRRA, titled "Application of Anti-Discrimination Laws," provides that "all *employees* of [USCIRF] shall be treated as employees whose pay is disbursed by the Secretary of the Senate or the Chief Administrative Officer of the House of Representatives and the Commission shall be treated as an employing office of the Senate or the House of

---

[2] USCIRF urges the Court to consider two documents attached as exhibits to the Defendant's Partial Motion to Dismiss, titled "Order for Supplies and Services" and "Scope of Work," but the Court declines. Generally, when deciding a motion to dismiss under Rule 12(b)(6), a court will consider only the facts alleged in the complaint and any documents attached to or incorporated into the complaint. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In some cases, a court may consider documents upon which the plaintiff's complaint "necessarily relies," even if the defendant produces the document in a motion to dismiss. *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009); *see also Marshall v. Honeywell Technology Solutions, Inc.,* 536 F. Supp. 2d 59, 65 (D.D.C. 2008) ("[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion [to dismiss] to one for summary judgment"). Here, Ghori-Ahmad did not incorporate these documents by reference in the Complaint, and the Complaint in no way relies upon them. Unlike in the cases cited by USCIRF, Ghori-Ahmad is not suing on these documents, or basing her claim on any rules or agreements set forth therein. *See Prince George's Hosp. Ctr. v. Advantage Health Plan, Inc.*, 865 F. Supp. 2d 47, 51 (D.D.C. 2012) (permitting consideration of contractual documents that were "central to [plaintiff's] claims"); *In re APA Assessment Fee Litig.*, 862 F. Supp. 2d 1, 8 (D.D.C. 2012) (reviewing membership bylaws where "plaintiffs' claim revolve[d] around whether payment of [a] special assessment was required for membership"); *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 218 (D.D.C. 2012) *reconsideration denied*, 922 F. Supp. 2d 96 (D.D.C. 2013) (reviewing benefit plan documents where "plaintiff's entire complaint centers on the retirement benefits that he contends he is entitled to receive"). The Court also notes that even valid, integrated contractual agreements do not conclusively answer the employee/independent contractor question – as *Spirides* itself held. *See Spirides*, 613 F.2d at 833 (rejecting the district courts "virtually exclusive reliance on the contract language as indicative of appellant's employment status" and requiring review of "all of the circumstances surrounding Spirides' work relationship" in addition to the contract language). Nor does USCIRF request that the Court convert its motion to one for summary judgment.

Representatives." 22 U.S.C. § 6432b(g) (emphasis added). The CAA extends the protections of Title VII, among other laws, to "[a]ll personnel actions affecting covered *employees*," 2 U.S.C. § 1311(a), and defines "covered employee" to include "an employee of" the Senate and the House of Representatives. 2 U.S.C. §§ 1301(3), 1311(a) (emphasis added). Combined, 22 U.S.C. § 6432b(g) and 2 U.S.C. § 1301 operate to bring "all of the employees of [USCIRF]" within the protections of the CAA.

Ghori-Ahmad does not dispute that the CAA, like Title VII, protects "employees" only, not independent contractors. The dispute lies in whether Ghori-Ahmad was an employee or an independent contractor during her 90-day position at USCIRF.

In *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979), the D.C. Circuit explained that distinguishing employees from independent contractors in Title VII cases involves "analysis of the 'economic realities' of the work relationship." The "most important factor" in this analysis is "the extent of the employer's right to control the means and manner of the worker's performance," and where an employer has such right to control, "an employer/employee relationship is likely to exist." *Id.* at 831-32. *Spirides* also identifies eleven other factors that bear on the economic realities of the relationship.[3] However, the court cautioned that "[c]onsideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative." *Id.* at 831; *see also Redd v. Summers*, 232 F.3d 933, 938 (D.C. Cir. 2000) (applying *Spirides* and separating the factors into four groups). To draw a distinction

---

[3] The other factors are: (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *Spirides*, 613 F.2d at 832.

between employees and independent contractors is a "relatively open-ended, fact-intensive inquiry." *Konah v. District of Columbia*, 815 F. Supp. 2d 61, 70 (D.D.C. 2011).

At this stage it is unnecessary to undertake a comprehensive analysis of the *Spirides* factors in order to decide USCIRF's motion. Nothing in the *Spirides* line of cases suggests that a plaintiff must address all (or any) of the *Spirides* factors in order to survive a motion to dismiss. Rather, at the pleading stage, Ghori-Ahmad need only plead factual content from which this Court can reasonably infer that she was a USCIRF employee. *Iqbal*, 556 U.S. at 678. She has done so.

Ghori-Ahmad states that she "reported directly to Mr. Thames and a Senior Policy Analyst and worked at their direction." Compl. ¶ 58. She describes working at the USCIRF offices, using USCIRF equipment. *Id.* She explains her job duties and characterizes them as "similar to" those of a full-time policy analyst. *Id.* ¶ 59. According to her Complaint, she received instructions to introduce herself as a member of USCIRF's staff when representing the organization, and was referred to as a member of the staff. *Id.* ¶ 60. Finally, Ghori-Ahmad alleges that after her 90-day position ended, USCIRF assigned her duties to other staff members. *Id.* ¶ 68.

Ghori-Ahmad's discrimination claims bear little resemblance to those in which a plaintiff utterly fails to allege the existence of an employment relationship, or simply admits independent contractor status. *See*, *e.g.*, *Palmer v. Napolitano*, 867 F. Supp. 2d 120, (D.D.C. 2012) ("Given that Plaintiff asserts that she was a contractor and does not claim to have been an employee in either law or fact, that is the end of the matter"); *Konah*, 815 F. Supp. 2d at 70-71 (complaint did not allege that plaintiff was an employee, or "put forth any facts that might allow the court to conclude that the District was an employer under *Spirides* or *Redd*"). While USCIRF argues

cogently in support of the factors that would support Ghori-Ahmad's being an independent contractor, the Court concludes that the existing factual issues preclude dismissal. Accordingly, the Court denies USCIRF's motion insofar as it seeks to dismiss Ghori-Ahmad's discrimination claims.

### B. USCIRF's Motion to Dismiss Ghori-Ahmad's Retaliation Claim is Denied

USCIRF moves to dismiss Ghori-Ahmad's retaliation claims on two grounds: first, that Ghori-Ahmad was not a USCIRF employee at the time of her EEO complaint, and second, that Ghori-Ahmad fails to allege a materially adverse action. Def's Mot. at 26-27. As discussed above, the question of employee vs. independent contractor remains unresolved at this point and cannot justify dismissal. USCIRF's contention that Ghori-Ahmad failed to allege any materially adverse action presents a closer question, but Ghori-Ahmad has pleaded sufficient facts concerning the alleged retaliation to survive a Rule 12(b)(6) motion to dismiss.

To prevail on a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances," and "an act that would be immaterial in some situations is material in others." *Burlington Northern*, 548 U.S. at 69. As the Supreme Court succinctly explained: "Context matters." *Id.*

Ghori-Ahmad alleges that USCIRF management reduced her workload, gave her less substantive assignments, diminished her opportunities to interact with USCIRF Commissioners, caused her to be isolated from the rest of the staff, and threatened to escort her from the building.

Compl. ¶¶ 61-63, 114. She also states that after learning of her EEO counseling, Acting Director Knox Thames verbally withdrew his support for her conversion into a permanent employee. *Id.* ¶ 61. Ghori-Ahmad did not receive a permanent position, nor did USCIRF renew or extend her 90-day position. *Id.* ¶ 66.

At this stage, Ghori-Ahmad need not establish that every action she alleges was in fact materially adverse. The facts alleged in her Complaint plausibly demonstrate that at least some of USCIRF's actions would dissuade a reasonable employee from engaging in protected activity. Some other actions would not be materially adverse without additional evidence of the context in which they occurred, but that is not fatal to her claim.

For example, threats of future harm or discipline are not generally actionable in this Circuit. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) ("courts have been unwilling to find adverse actions where the suspension is not actually served"). So the threat to escort Ghori-Ahmad from the building would not qualify as materially adverse, nor would Thames's withdrawal of support, unless these actions resulted in some tangible harm. Similarly, Ghori-Ahmad's loss of opportunities to interact with Commissioners and coworkers might prove nothing more than the "purely subjective injur[y]" to reputation and satisfaction the D.C. Circuit rejected in *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). On the other hand, in some contexts a forced isolation or curtailing of access to higher-ups can affect an employee's future prospects, as Ghori-Ahmad arguably implies. Compl. ¶ 115 ("But for her EEO complaint, Ms. Gori-Ahmad [sic] would have continued to receive more substantive work and exposure to the Commission and she would have received an extension of her temporary position and/or a permanent position at USCIRF"); *see also Burlington Northern,* 548 U.S. at 69 ("excluding an employee from a weekly training lunch that contributes significantly to the employee's

professional advancement might well deter a reasonable employee from complaining about discrimination"). More information would be needed for the isolation and loss of interaction opportunities to qualify as materially adverse on their own.

However, Ghori-Ahmad offers a clearer example of materially adverse action in alleging that USCIRF reduced her workload and downgraded the quality of her assignments. Such allegations require precisely the kind of fact-bound contextual inquiry that the Supreme Court prescribed in *Burlington Northern*. *See Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007) ("Whether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question"). Changes in job duties and responsibilities are not actionable where they cause a purely subjective harm to reputation or satisfaction, but may at a certain magnitude become materially adverse. *See id.* at 364-65 (recognizing possible adverse action where reassignment left plaintiff with "significantly different – and diminished – supervisory and programmatic responsibilities"); *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (finding materially adverse action where "[t]he record include[d] uncontroverted testimony that [Plaintiff's] duties dramatically declined in both quantity and quality"). Ghori-Ahmad's pleadings suggest that she expected her temporary position to become permanent, based in some part on her performance, but that the decline in quality and quantity of her assignments prevented her from performing well enough secure a permanent position. Compl. ¶¶ 115, 121. The Court cannot say that the proffered scenario, when placed in a complete factual context, could not support a retaliation claim.

In addition, Ghori-Ahmad contends that USCIRF retaliated against her by refusing to renew, extend or convert her position to permanent. While it appears that this Circuit has not spoken directly to the question of whether nonrenewal of an employment contract can qualify as

materially adverse action under Title VII, *see Parker-Darby v. Dept. of Homeland Security*, 869 F. Supp. 2d 17, 21 (D.D.C. 2012) ("Our Circuit has not yet ruled on whether the nonrenewal of a term appointment can constitute an adverse action for purposes of Title VII and the ADEA"), other circuits increasingly recognize such claims, *see*, *e.g.*, *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009) ("An employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions") (collecting cases); *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) ("The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action"); *Carter v. Univ. of Toledo,* 349 F.3d 269, 270–71 (6th Cir. 2003) (recognizing failure to renew contract as adverse action); *Minshall v. McGraw Hill Broad. Co.,* 323 F.3d 1273, 1279–82 (10th Cir. 2003) (same); *Mateu–Anderegg v. Sch. Dist. of Whitefish Bay,* 304 F.3d 618, 625 (7th Cir. 2002) (same); *Kassaye v. Bryant Coll.,* 999 F.2d 603, 607 (1st Cir. 1993) (same).[4]

In light of the trend toward recognizing such claims in other circuits, the Court declines

---

[4] USCIRF cites two cases arising under civil service employment laws, *Suzal v. Director, United States Info. Agency*, 32 F.3d 574 (D.C. Cir. 1994) and *Nat'l Treasury Empls. Union v. U.S. Merit Systems Protection Bd.*, 743 F.2d 895 (D.C. Cir. 1984). *Suzal* and *Nat'l Treasury Employees* concern the definition of "adverse action" in a collective bargaining agreement, as it bears on the question of which employment disputes can be sent to arbitration. *See Suzal*, 32 F.3d at 579-80 (holding that nonrenewal of an appointment is not a "removal" under 5 U.S.C. § 7512, and thus not an "adverse action" as defined in 5 U.S.C. § 7512); *Nat'l Treasury Employees*, 743 F.2d at 914-15 (laying off seasonal workers according to the terms of their employment contract was not a "furlough," and thus not an "adverse action"). Both cases were decided by reference to 5 U.S.C. §7512, which does not purport to define retaliation and is not applicable in this case. Whether nonrenewal qualifies as a "removal" or a "furlough" under § 7512 has little relevance to whether USCIRF retaliated against Ghori-Ahmad in violation of the CAA. Title VII contains a broad definition of retaliation, under which employers may not "discriminate against" employees for engaging in protected activity. 42 U.S.C. § 2000e(3)(a). So, the relevant question is whether an employer "discriminate[s] against" an employee by refusing to renew, extend, or convert a temporary position. Under the Supreme Court's formulation in *Burlington Northern*, a nonrenewal of this type "well might dissuade" a reasonable employee from engaging in protected activity, especially where the employer had previously represented that the employment relationship would continue. *Burlington Northern,* 548 U.S. at 68.

USCIRF's invitation to hold as a matter of law that nonrenewals fall beneath the "materially adverse" threshold. Accordingly, the Court denies USCIRF's motion to dismiss Ghori-Ahmad's retaliation claim.

### C. USCIRF's Motion to Dismiss Ghori-Ahmad's Detrimental Reliance Claim is Granted

USCIRF argues that this Court lacks jurisdiction over Ghori-Ahmad's detrimental reliance claim on the ground that the CAA grants the district court jurisdiction only over claims that arise under that statute, and the CAA provides no right of action for detrimental reliance and precludes detrimental reliance claims. Def's Mot. at 12. USCIRF also contends that the CAA does not waive sovereign immunity, and that Ghori-Ahmad failed to exhaust her administrative remedies with respect to the detrimental reliance claim. *Id.* at 12-15.

Ghori-Ahmad pleaded jurisdiction under the CAA, 2 U.S.C. § 1408, and under Section 3 of the IRFRRA, 22 U.S.C. § 6432b. She concedes that her detrimental reliance claim does not arise under the CAA. Pl's Opp. at 31, n.16. Rather, it sounds in contract. Neither the CAA nor the IRFRRA provide any basis for exercising jurisdiction over a claim for detrimental reliance. Nevertheless, Ghori-Ahmad suggests that the Court could exercise supplemental jurisdiction over her detrimental reliance claim, *id.* at 29. The Court declines to do so.

The D.C. Circuit has suggested in dicta that a court might exercise supplemental jurisdiction over claims otherwise properly before the Federal Court of Claims. *See Rochon v. Gonzales*, 438 F.3d 1211, 1215 (D.C. Cir. 2006). However, it appears that no court has taken up this suggestion. *See*, *e.g.*, *Henderson v. Shinseki*, 4:09-CV-188-A, 2009 WL 4931391 (N.D. Tex. Dec. 21, 2009) ("declin[ing] the opportunity to be the first" court to avail itself of *Rochon*'s supplemental jurisdiction option). After *Rochon*, this Circuit re-emphasized in *Greenhill v.*

*Spillings*, 482 F.3d 569, 572 (D.C. Cir. 2007) that the Federal Court of Claims has exclusive jurisdiction over contract claims of $10,000 or more.

Furthermore, the CAA (like Title VII) was intended to be a "comprehensive procedural and remedial scheme." *Hensley v. Office of Architect of the Capitol*, 806 F. Supp. 2d 86, 92 (D.D.C. 2011). And indeed, Ghori-Ahmad's CAA claims would provide all the relief she seeks in her detrimental reliance claim. In short, the detrimental reliance claim is redundant and does not warrant the exercise of supplemental jurisdiction by this Court. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (describing pendent jurisdiction as a "doctrine of discretion"). The Court grants USCIRF's motion to dismiss Ghori-Ahmad's detrimental reliance claim.

## IV. CONCLUSION

**THEREFORE**, it is, hereby, **ORDERED:**

1) Defendant's Motion to Dismiss is **DENIED** as to Counts I, II, and III;

2) Defendant's Motion to Dismiss is **GRANTED** as to Count IV.

A separate Order consistent with this Memorandum Opinion shall be issued.

September 17, 2013

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE